# EXHIBIT B

IN THE CIRCUIT COURT OF THE 20TH JUDICIAL CIRCUIT IN AND FOR LEE COUNTY, FLORIDA

CASE NO.: 20-CA-004555

CATLIN DENTAL, P.A.,

   Plaintiff,

v.

THE CINCINNATI INDEMNITY COMPANY,

   Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS COMPLAINT

**THIS MATTER** came before the Court for a hearing via Zoom telephone and video conference on November 23, 2020, on Defendant's, The Cincinnati Indemnity Company ("Cincinnati"), Motion to Dismiss Complaint and Incorporated Memorandum of Law filed on September 15, 2020 (the "Motion to Dismiss"). Plaintiff, Catlin Dental, P.A. ("Catlin"), filed a Memorandum of Law in Opposition to Defendant's Motion to Dismiss on November 18, 2020 (the "Opposition"). Additionally, Cincinnati filed Notices of Supplemental Authority on November 17 and 20, 2020 and Catlin filed Notices of Filing on September 17 and November 18, 2020 (collectively, the "Notices"). Having reviewed the Motion to Dismiss, the Opposition, the Notices, considered the argument of counsel at the hearing, and analyzed the applicable legal authority, the Court finds that the Motion to Dismiss should be **GRANTED without leave to amend**, for the reasons discussed below.

## BACKGROUND

This action concerns Catlin's request for insurance coverage under a commercial property insurance policy issued by Cincinnati for its alleged loss of business income and extra expense relating to the ongoing COVID-19 pandemic.

Catlin filed its Complaint and Demand for Jury Trial (the "Complaint") against Cincinnati in this Court on July 14, 2020. According to the Complaint, Catlin conducts business as a general dentistry practice located at 4447 Camino Real Way, Fort Myers, FL 33966 (the "Insured Premises"). Catlin entered into an insurance contract with Cincinnati to insure Catlin's business premises under a policy number CAP 507 69 15 (the "Policy").[1] The effective dates of the Policy are from January 2, 2018 to January 2, 2021.

Beginning in or about March 2020, Catlin allegedly sustained a severe business interruption resulting from government executive orders limiting dental offices to only emergency procedures. Specifically, in support of Catlin's contention that it had to limit the scope of its practice, the Complaint references an executive order entered in or about March 2020. Catlin further contends that it sustained "business losses and extra expenses, and related losses resulting from actions taken by civil authorities to stop the human and surface to human spread of the COVID-19 outbreak." *Complaint*, ¶ 15. Catlin alleges that its losses and expenses are covered under the Policy. Cincinnati denied the claim because the loss at issue did not come within the coverage grant of the Policy and because the Policy's "pollutant" exclusion also barred coverage.

---

[1] A copy of the Policy was not attached to the Complaint, but was nevertheless incorporated by reference. *See* Complaint, ¶ 7. Under Florida law, where the terms of a legal document are incorporated by reference into the complaint, the trial court may consider the contents of the document in ruling on a motion to dismiss. *See One Call Prop. Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. 4th DCA 2015); *Veal v. Voyager Prop. & Cas. Ins. Co.*, 51 So. 3d 1246, 1249 (Fla. 2d DCA 2011).

The Complaint asserts two causes of action against Cincinnati: breach of contract (Count I) and declaratory judgment (Count II). Regarding Count I, in Catlin's view, Cincinnati breached the Policy by failing to provide coverage under the Policy's Business Income, Extra Expense and Civil Authority provisions. In Count II, Catlin seeks a declaration that "Defendant has erroneously refused to provide all or part of the police [sic] benefits that the Plaintiff is due" as a result of Catlin's alleged business income losses and extra expenses incurred in result to the COVID-19 pandemic. *Complaint*, ¶ 30.

Cincinnati moves to dismiss the Complaint with prejudice as to both counts. In support of its motion, Cincinnati makes four primary arguments. First, Cincinnati argues that Catlin is not entitled to Business Income or Extra Expense coverage because it does not allege any direct physical loss or damage to the Insured Premises, which is required for coverage. Second, Catlin is not entitled to Civil Authority coverage because the Complaint does not allege direct physical loss or damage to other property and does not allege a prohibition of access to the Insured Premises. Third, Cincinnati argues that even if Catlin had alleged direct physical loss, the Policy's "pollutant" exclusion would otherwise apply to bar coverage. Finally, Cincinnati argues that since there has not been a breach of contract and Count II is otherwise subsumed within Count I, then Count II must also be denied. Cincinnati also raises other procedural deficiencies with Count II.

Catlin responds in its Opposition that it has stated actionable claims. Catlin makes three primary arguments. First, Catlin argues that the Complaint sufficiently alleges "loss of or damage to" property. Secondly, Catlin argues that cases involving other types of "contamination" illustrate that there has been "physical loss of or damage to property" in this action. *Opposition*, p. 6. Finally, Catlin argues that the executive order "barred them from normal lawful access to their practice," which shows why Catlin should qualify for Civil Authority coverage. *See id.*, p. 12.

## LEGAL STANDARD

Rule 1.140(b) of the Florida Rules of Civil Procedure governs motions to dismiss. "The function of a motion to dismiss a complaint is to raise a question of law as to the sufficiency of the facts alleged to state a cause of action." *Reed v. Sampson*, 349 So. 2d 684 (Fla. 4th DCA 1977). When confronted with a motion to dismiss, a court must determine whether the complaint, as phrased within its four corners, sufficiently states a cause of action whereby relief can be granted. *See Fox v. Professional Wrecker Operators of Fla., Inc.*, 801 So. 2d 175 (Fla. 5th DCA 2001).

Under Florida procedural law, a complaint that simply strings together a series of sentences and paragraphs containing legal conclusions and theories does not establish a claim for relief. *See* Fla. R. Civ. P. 1.110; *see also Barrett v. City of Margate*, 743 So. 2d 1160, 1162–63 (Fla. 4th DCA 1999) ("It is insufficient to plead opinions, theories, legal conclusions or argument."). The complaint must set out the elements and the facts that support the claims so that the court and the defendant can clearly determine what is being alleged. *See id., see also Messana v. Maule Indus.*, 50 So. 2d 874, 876 (Fla. 1951) (a complainant must "plead [a] factual matter sufficient to apprise his adversary of what he is called upon to answer so that the court may, upon proper challenge, determine its legal effect.").

Although the pleading of strict forms of causes of action is no longer required under Florida law, the Florida Supreme Court has nevertheless held that in order for a claim to be legally sufficient, the plaintiff must plead ultimate facts to support each element of the cause of action asserted. *See Eastern Airlines, Inc. v. King*, 557 So. 2d 574 (Fla. 1990); *see also Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490 (Fla. 3d DCA 1994). "Ultimate facts" are those facts "found in that vaguely defined field lying between evidentiary facts on the one side and the primary issue or conclusion of law on the other." *Black v. Rouse*, 587 So. 2d 1359 (Fla. 4th DCA 1991).

A pleading is insufficient if contains merely conclusions as opposed to ultimate facts supporting each element of the cause of action. *See Price v. Morgan*, 436 So. 2d 1116 (Fla. 5th DCA 1983).

Similar principles apply in federal courts.[2] Specifically, a complaint that patches together a string of legal conclusions will not survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). If legal conclusions are alleged, they are not deemed true for purposes of a motion to dismiss. *Id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). As the U.S. Supreme Court has long held, "we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Likewise, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).

When considering insurance coverage disputes, courts routinely dismiss complaints for failure to state a claim when a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the claim is not covered. *See, e.g., Zodiac Group, Inc. v. Axis Surplus Ins. Co.*, 542 Fed. App'x 844 (11th Cir. 2013) (affirming dismissal of complaint because the "plain language of the Policy precluded coverage" for the underlying claim); *Cammarota v. Penn-Am. Ins. Co.*, 2017 WL 5956881, at *2 (S.D. Fla. Nov. 13, 2017) (granting motion to dismiss with prejudice "because the Auto Exclusion precludes coverage for the Underlying Claims."); *MJCM, Inc. v. Hartford Cas. Ins. Co.*, 2010 WL 1949585 (M.D. Fla.

---

[2] *See* Author's Comment to Fla. R. Civ. P. 1.110 (noting that "[p]leadings under the Florida Rules are now similar to the Federal Rules."); *see also Carriage Hills Condo., Inc. v. JBH Roofing & Constructors, Inc.*, 109 So. 3d 329, 334 (Fla. 4th DCA 2013) ("Because our [Florida] rules of court procedures were patterned closely after the federal rules, federal cases interpreting comparable provisions are persuasive and routinely looked to for interpretive guidance.").

May 14, 2010) (applying Florida law and granting motion to dismiss with prejudice on breach of contract claim because the underlying lawsuit was not covered under the insurance policy at issue).

## DISCUSSION

This Court is sympathetic to the plight of so many business owners in the wake of the COVID-19 pandemic. But, this Court cannot allow sympathy to cloud its review of the plain meaning of an insurance policy. Insurance companies cannot bear the burden of this crisis where, as here, the Policy does not provide coverage for purely economic losses resulting from the COVID-19 pandemic. Taking as true the facts alleged in the Complaint, and considering such facts in conjunction with the plain language of the Policy, the Court finds that the Motion to Dismiss should be granted and leave to amend the Complaint would be futile.

### I. The Policy

The Policy provides Business Income, Extra Expense, and Civil Authority coverages to the Insured Premises, subject to its terms, conditions, limitations, exclusions and other provisions. Starting with the Policy's Business Income coverage, the Policy states in pertinent part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical "loss" to property at "premises" which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss….

*Motion to Dismiss*, Policy (attached as Exhibit A) p. CIC00142.

The Policy's Extra Expense coverage also states in pertinent part:

**(2)  Extra Expense**

We will pay "Extra Expense" you incur during the "period of restoration":

(a)  To avoid or minimize the "suspension" of business and to continue "operations":

> > 1) At the "premises"; or
> >
> > 2) At replacement locations or at temporary locations, including:
> >
> > > a) Relocation expenses; and
> > >
> > > b) Costs to equip and operate the replacement or temporary locations; or
> >
> > (b) To minimize the "suspension" of business if you cannot continue "operations".

*See id.*, p. CIC00110.

Additionally, the Policy's Civil Authority coverage states in pertinent part:

> **(4) Civil Authority**
>
> We will pay for the actual loss of "Business Income" you sustain and "Extra Expense" you incur caused by an action of civil authority that prohibits access to the "premises" due to direct physical "loss" to property, other than at the "premises", caused by or resulting from any Covered Cause of Loss.

*See id.*

The term "loss" is defined by the Policy as accidental loss or damage. *See id.*, p. CIC00148. And a Covered Cause of Loss is defined as "RISKS OF DIRECT PHYSICAL LOSS unless the 'loss' is ..." excluded or limited. *See id.*, p. CIC00098.

## II. <u>Insurance Contract Interpretation in Florida</u>

Under Florida law, insurance contracts must be construed in accordance with their plain language. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). Insurance contracts are to be interpreted and construed in a manner that is "reasonable, practical, sensible, and just." *Colony Ins. Co. v. Montecito Renaissance, Inc.*, 2011 WL 4529948, *3 (M.D. Fla. Sept. 30, 2011). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings,*

7

*Inc. v. USF&G*, 913 So. 2d 528, 532 (Fla. 2005). Courts should "attempt to construe the contractual language in a manner which gives all the provisions effect." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 739 (Fla. 2002).

A provision is not rendered ambiguous simply because it is complex and requires analysis for application. *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007). Only "when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986). The mere fact that parties argue for different interpretations does not make a policy ambiguous and a court will not construe an insurance policy to reach an absurd result. *Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998).

### III. The Complaint Fails to Allege Direct Physical Loss or Damage

As an initial matter, we are dealing with a property insurance policy in this action. Turning first to the Business Income coverage argument, Catlin argues that the Motion to Dismiss should be denied because COVID-19 particles existed in the air and the risk of the COVID-19 pandemic outweighed continued operations. But, Catlin did not identify any actual presence of the virus at the Insured Premises or resulting damage.

The Court is in agreement with the cases cited by Cincinnati in its motion and by its counsel during the November 23 hearing that there needs to be a distinct, demonstrable, physical alteration of the structural integrity of the property in order to have direct physical loss or damage to the property. Airborne particles and the mere presence of a virus in the community do not constitute direct physical loss to the property. *See, e.g., DAB Dental PLLC d/b/a Sunshine Dentistry v. Main*

*Street Am. Protection Ins. Co.*, No. 20-CA-5504 (Fla. Cir. Ct., Hillsborough Cty. Nov. 10, 2020) (Florida law "reflect[s] that actual, concrete damage is necessary." (citation omitted); *Dime Fitness, LLC d/b/a Anytime Fitness v. Markel Ins. Co.*, No. 20-CA-5467 (Fla. Cir. Ct., Hillsborough Cty. Nov. 10, 2020) ("Plaintiff does not allege a direct physical loss); *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-CV-22833, 2020 WL 6392841, at *8 (S.D. Fla. Nov. 2, 2020) ("The Complaint does not allege any physical harm to Plaintiffs' Covered Property much less 'direct physical loss of or physical damage' caused by or resulting from a 'Covered Cause of Loss.'"); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV-WILLIAMS/TORRES, 2020 WL 5051581, at *5-7 (S.D. Fla. Aug. 26, 2020) ("courts in our district have found that "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.' ... Plaintiff only alleges that two Florida Emergency Orders forced the closure of its restaurant. And, as stated earlier, courts have found this to be insufficient to state a claim because there must be some allegation of actual harm.") (citation omitted); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's*, No. 8:20-cv-1605-T-30AEP, 2020 WL 5791583, at *3-5 (M.D. Fla. Sept. 28, 2020) ("Plaintiff argues that economic damage is synonymous with 'physical loss' and is therefore covered under the Policies. Plaintiff's argument is unpersuasive because Florida law and the plain language of the Policies reflect that actual, concrete damage is necessary.... Significantly, Plaintiff is not the first insured to seek coverage due to COVID-19 government shutdown orders under a policy that limits coverage to losses caused by direct physical loss or damage to the property. Courts across the country have held that such coverage does not exist where, as here,

9

policyholders fail to plead facts showing physical property damage.... there is simply no coverage under the policies if they require 'direct physical loss of or damage' to property.").

Catlin relies upon the opinions from *Studio 417, Inc. v. The Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo., Aug. 12, 2020) and *North State Deli, LLC v. The Cincinnati Ins. Co.*, No. 20-CVS-02569, 2020 WL 6281508 (N.C. Super. Durham Cty., Oct. 10, 2020) in support of its argument that the allegations in the Complaint command a different result. However, the Court disagrees. Not only are these cases from jurisdictions outside of this State and do not apply Florida law, the Court finds that neither of these cases is persuasive or well-reasoned.

Catlin further argues that it incurred extra expense in the form of extra expense to decontaminate its business. However, Catlin does not allege any facts to support a finding that COVID-19 was present at the Insured Premises. Additionally, Cincinnati correctly argues that under Florida law, if the property can be cleaned, it has not sustained direct physical loss or damage. *See Malalube, LLC*, 2020 WL 5051581, *8 (citing *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974 (S.D. Fla. June 11, 2018), *aff'd*, 2020 WL 4782369 (11th Cir. Aug. 18, 2020) (the plaintiff in *Mama Jo's* failed to put forth any evidence that his cleaning claim constituted a direct physical loss); *Infinity Exhibits*, 2020 WL 5791583, at *4 (citing *Malaube*, 2020 WL 5051581, at *8) ("[T]he action should be dismissed because the policy required direct physical loss or property damage and plaintiff had alleged 'merely [ ] economic losses—not anything tangible, actual, or physical.'").

The Coronavirus does not physically alter the appearance, shape, color, structure or other material dimension of property. Even if Catlin had alleged the virus to be present at the Insured Premises, this would be insufficient. *See, e.g., Uncork & Create, LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-00401, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020) ("[E]ven when present,

COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a covered 'loss' is required to invoke the additional coverage for loss of business income under the Policy."). Therefore, there is no direct physical loss triggering coverage under the Policy's Business Income coverage or Extra Expense coverage.

### IV. Civil Authority Coverage

Turning next to the issue of Civil Authority coverage, the Court again, states that there does not appear to be any direct physical loss or damage to property as outlined earlier. For the same reasons, no direct physical loss or damage to other property is alleged. This is required under the Policy's Civil Authority coverage. Additionally, there was no prohibition of access to the Insured Premises. It was only limited. To the extent that Catlin's business operations were limited, it could still supply emergency services. Thus, it wasn't prohibited from conducting all services.

Catlin argues that the Motion to Dismiss should be denied because COVID-19 particles existed in the air and the risk of the COVID-19 pandemic outweighed continued operations. Catlin further relies upon *Studio 417* by arguing that the Policy does not specify what degree of access must be prohibited. Neither of these arguments are persuasive.

The allegations of the Complaint demonstrate that multiple factors required for Civil Authority coverage remain unmet. Thus, the Court finds that Catlin's claim does not fall within the Civil Authority coverage provisions under the Policy. This Court's analysis matches that of a growing body of persuasive cases addressing economic loss as a result of the COVID-19

pandemic, and the governmental directives aimed at slowing its spread. *See generally Nahmad, Malaube, Infinity, DAB Dental, Dime Fitness.*

V. **The "Pollutant" Exclusion**

In addition to a lack of direct physical loss or damage, Cincinnati argues that even if the Policy's insuring agreements for Business Income, Extra Expense or Civil Authority coverages had been implicated by the allegations in the Complaint, the Policy's "pollutant" exclusion would apply to bar coverage for Catlin's claims. The Court is unaware of any cases applying the "pollutant" exclusion to a claim relating to COVID-19. Nevertheless, the Court need not reach the merits of this exclusion because it finds that the Policy's insuring agreements have not been triggered.[3]

VI. **Count II is Duplicative of, and Subsumed by, Count I**

In Count II of the Complaint, Catlin seeks a declaratory judgment that there is coverage for its alleged losses under the Policy. Florida Statute § 86.011 confers trial courts with discretionary jurisdiction to grant declaratory relief. The courts in Florida routinely dismiss declaratory judgment claims that are superfluous because other claims raised in the same complaint will resolve all of the same disputed issues. *See, e.g., McIntosh v. Harbour Club Villas Condo. Ass'n*, 468 So. 2d 1075, 1081 (Fla. 3d DCA 1985) *Kies v. Fla. Ins. Guar. Ass'n*, 435 So. 2d 410, 411 (Fla. 5th DCA 1983); *Taylor v. Cooper*, 60 So. 2d 534, 535 (Fla. 1952). Additionally, the courts are accorded wide discretion under Fla. Stat. § 86.011 regarding their decision to decline jurisdiction to entertain a declaratory judgment proceeding. *See Kelner v. Woody*, 399 So. 2d 35, 37 (Fla. 3d DCA 1981).

---

[3] The Court is not denying the motion to dismiss as it relates to the "pollutant" exclusion coverage.

Here, the Court finds that Count II of the Complaint is subsumed under Count I, a breach of contract action. The Court is not willing to grant discretion to allow the declaratory action to continue when it is granting the Motion to Dismiss on Count I of the Complaint, for the reasons discussed above. Accordingly, Count II is dismissed as well.

## CONCLUSION

After thorough review and careful consideration of the parties' submissions, argument of counsel, and review of state and federal court cases in Florida and other states, the Court finds that the Motion to Dismiss is **GRANTED**. The primary basis for the Court's ruling is that there needs to be a distinct, demonstrable, physical alteration to the structural integrity of property and that has not occurred, nor does the Court believe it can be alleged. The Court further finds that any attempt to amend the pleadings would be futile.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Cincinnati Indemnity Company's Motion to Dismiss Complaint and Incorporated Memorandum of Law is **GRANTED**.

2. Plaintiff's Complaint and Demand for Jury Trial is **DISMISSED without leave to amend.**

3. Plaintiff shall go hence without day.

**DONE and ORDERED** in Lee County, Florida.

*(e)Signed by James Shenko 12/11/2020 17:53:48 eXMcSQ4Q*

Electronic Service List
Carlos J Cavenago III <service@parveyfrankel.com>
Carlos J Cavenago III <Carlos@parveyfrankel.com>
Carlos J Cavenago III <Leah@parveyfrankel.com>
Jason M Chodos <chodos@litchfieldcavo.com>
Collin D Jackson <jackson@litchfieldcavo.com>